Henry W. Lengyel, J.
The claim herein, which was duly filed, is for damages for breach of contract in the sum of $1,548.09, which represents interest that claimant was required to pay on $103,206.41 from January 1, 1965 to March 31, 1965.
On or about April of 1964, the Division of Parole, a State agency, was unexpectedly required to remove from the building it occupied in New York City. On May 8, 1964, the State agency, on a letter agreement (Exhibit “ 3 ”), rented on a temporary basis a portion of premises known as 75 Maiden Lane in New York City. Subsequently, a formal written lease (Exhibit “ 5 ”) was entered into for the period of July 1, 1964 to June 30,1969.
Considerable renovation was required to make the rented space fully and efficiently usable by the State. The parties informally agreed to the renovations required and, in fact, such renovations were commenced in May, 1964, and were carried through to completion while the space was occupied by employees of the Division of Parole. In the lease of July 1, 1964 (Exhibit “ 5 ”), the renovation agreement was formalized and the method of payment for said renovations was set forth in paragraph 33, which read as follows:
“ 33. It is mutually agreed that a cost estimate for renovations has been established at $175,000.00, and said estimate is to be considered a maximum upset figure, subject to downward revision based on receipted bills to be provided to the Tenant by Landlord.
“ It is further agreed that participation in costs of renovations by the Landlord is limited to the first Fifty Thousand and 00/100 Dollars ($50,000.00) and all costs over the initial $50,000.00 are to be borne by the Tenant.
“ Upon determination of Tenant’s portion of renovating cost, as above outlined, the Tenant shall reimburse the Landlord for its share in the month immediately following said determination. The reimbursement payments shall be added to the monthly rental provided in Clause No. 3 herein. ’ ’ (Emphasis added.)
The renovation work was completed in the Fall of 1964 at a total cost of $153,206.41. On November 27, 1964, after examination and approval by the Office of General Services, claimant forwarded to the Executive Department of the Division of Parole, for payment, its voucher in the sum of $103,206.41. On or about December 11, 1964, claimant was advised that there were no funds available for payment of said voucher and that a deficiency appropriation wTould be sought from the Legislature, which would permit payment about the middle of February, 1965. Claimant protested this situation by letter of December 11 and *741 advised the Office of General Services that, as it had had to borrow money to accomplish the renovation work, it felt it should be reimbursed for its additional interest cost.
Mr. Schlang, one of the partners in Maidgold Associates, testified that, at the time of negotiation of the lease (Exhibit “ 5 ”), he had been advised by Mr. Miner, Administrative Officer of the Division of Parole, that there were certain emergency funds available which would permit prompt payment to be made of the State’s share of the renovation costs. However, such emergency funds as were available in December, 1964, apparently were expended for other purposes and the deficiency appropriation was necessary. Unfortunately, the Winter of 1965 was the period that the Legislature encountered some difficulty in organization and, of course, a deficiency appropriation was not possible until said organization was accomplished. Claimant received said $103,206.41 on April 2, 1965, and, after said check had cleared, promptly paid said money to the bank from which it had borrowed the money at 6% interest.
The State does not in any material sense dispute the statement of facts set forth above, except perhaps as I have referred to conversations relative to an emergency fund. In fact, in her brief, the Assistant Attorney-General stated that, “ The claimant herein lost interest on the use of his [sic] money for a period of four months.”
The State takes the position that, under the executory clause contained in the lease agreement, the State was liable for the payment of these moneys only to the extent of moneys made available by the Legislature; and, that as the Legislature did not make such moneys available until March, 1965, there was no violation of this contract. I might agree with the State if this were a question of interest on late payment of rent under said lease; but it is not. This so-called lease was, as I have already stated, a combination of a lease and a contract for renovation construction. The ‘ ‘ executory clause ’ ’ of its own language refers only to ‘ ‘ moneys available to the Commissioner of General Services for the leasing of said premises ” (emphasis added). As evidence that the parties did not consider that the executory clause (Exhibit “ 5 ”, par. 3), applied to the renovation reimbursement, was paragraph 33 of Exhibit “ 5 ”, supra, which provided that reimbursement would be made in the month after the amount of reimbursement was determined. For the sake of argument, and to point up the fallaciousness of the State’s position, let us suppose the “ executory clause ” applied to the renovation reimbursement and the Legislature thought the State agency involved had made a bad bargain and refused *742 to appropriate this $103,206.41. This claimant could not then ever recover the money expended pursuant to said contract. No capable businessman with competent counsel would enter into an agreement fraught with such a hazard. This is why paragraph 33 was included and made part of the riders attached to the State’s lease form. As claimant’s counsel stated in his brief: ‘ ‘ Had the claimant been compelled to rely on an act of the Legislature, which had the power to refuse the appropriation, it is doubtful that the claimant would have proceeded to make the large expenditure.” The fact that paragraph 33 provided that: ‘ ‘ The reimbursement payments shall be added to the monthly rental provided in Clause No. 3 herein ” does not make such payment rent. This was merely a convenient conduit or method of making said payment.
I find that the State of New York breached its contract with the claimant herein; and, that said conduct on the part of the State added to the costs of renovation the sum of $1,548.09 which claimant had to pay in interest carrying charges.
The State takes the position that it cannot be required to pay interest; and, therefore, even if the court holds that it had breached its contract payment cannot be made. I disagree. In Agostini v. State of New York (255 App. Div. 264) the court awarded the claimant interest on $22,000 which had been wrongfully retained by the State for 83 days. The court stated (p. 266): “ Hence where money belonging to another is not paid over to the person entitled to receive it at the time it should be paid over, interest will be allowed for the detention. ” (See, also, Sweeney v. State of New York, 251 N. Y. 417, 420.)
The claimant is awarded the sum of $1,548.09, with interest thereon from April 1, 1965 to the date of entry of judgment herein.